IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| O'LILLIAN BAKER,<br>  Plaintiff, | )<br>)<br>) |
| v. | )    03 C 6551<br>) |
| MICHAEL SHEAHAN, Sheriff of Cook<br>County, Illinois, in his official capacity,<br>  Defendant. | )<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

Plaintiff O'Lillian Baker is a correctional officer at the Cook County Jail. She contends that her employer discriminated against her in violation of the Americans with Disabilities Act and retaliated against her after she complained about alleged discrimination in the workplace. Defendant Michael Sheahan, in his official capacity as the Sheriff of Cook County, has filed a motion for summary judgment on both of these counts.[1] For the following reasons, the defendant's motion for summary judgment is granted.

I.    **Background**

The following facts are undisputed unless otherwise noted. Baker has been employed as a correctional officer at the Cook County Jail since June of 1995. She was diagnosed with diabetes in 1999. In early 1999 and in March of 2000, Baker's doctor gave her a series of three notes. The first note requested that she be allowed to check her blood sugar levels and snack between meals in order to keep her blood sugar stable; the second note stated that she had symptoms of fatigue and needed to follow a strict diet; and the third note stated that she needed to have a snack every 2-3 hours due to her medical condition. Baker testified that she gave all

---

[1] In Count III of her complaint, Baker originally also sought relief under § 1983. She subsequently voluntarily dismissed this count, so her retaliation and ADA counts are the only claims presently before the court.

three notes to her supervisor, but does not recall which supervisor that was. The notes all addressed Baker's need to have snacks and thus did not specifically state that Baker needed to take her lunch break after 10:00 a.m.

In 2000, Baker was assigned to the barbershop in Division 10 of the jail. This position primarily required her to supervise inmates who were cutting detainees' hair. Baker generally worked from 7:00 a.m. until 3:00 p.m. The barbershop was open from 7:00 a.m. until 2:00 p.m., so Baker routinely was assigned other tasks during the last hour of her shift.

The area sergeant was responsible for setting the times for the officers in the barbershop, store room, and maintenance areas to take their lunch break. Any sergeant, however, also had the authority to tell a correctional officer when to take his or her lunch. In addition, officers who were superior to Baker had the authority to pull her out of the barbershop at any time and assign her to a new position. Baker preferred to take her lunch at the end of her shift because it allowed her to process more inmates through the barbershop since she did not have to transfer inmates to and from their wings at the beginning and end of her lunch break. Bringing snacks to the barbershop made it possible for her to do this.

At some point in 2000, Baker began to take insulin shots to control her blood sugar. She took two shots per day; one shot before she came to work and a second shot later in the day, occasionally before leaving work and otherwise at home. She took the shots for approximately two years and then switched to oral blood sugar medication four times per day.

When Baker worked at the barbershop, she reported to the area sergeant. When she began to take insulin, Sergeant McClain was Baker's supervisor. Sergeant Alex Cruz was never Baker's direct supervisor when she worked at the barbershop.

For the first six years of her employment with the Cook County Department of Corrections ("CCDOC"), Baker had a consistent record of good performance and either met or exceeded CCDOC standards in every category. According to Baker, however, this all changed in February of 2001 when a new officer, Sergeant Alex Cruz, was assigned to the division where Baker was working. At that time, Superintendent Collier instructed Baker and her twin sister, who also worked at the Cook County Jail, to decorate the jail chapel for Black History Month.

Sergeant Cruz objected to Baker taking time away from other duties to decorate and told her that security came first, so "[a]ll this other stuff can wait." In response, Baker agreed that security was the jail's number one priority but then added, "it's not stuff we are doing. It's the Black History Program, and if you must refer to it at all, to me, I'd appreciate it if you'd refer to it as that and not stuff." She also told Cruz that she and her sister were having problems being relieved from their other assignments and that she felt this was unfair since assigned officers were allowed to decorate without interruption for other celebrations, such as Cinco de Mayo.

Baker filed an internal informal complaint regarding Cruz's alleged discrimination. The internal complaint stated that: (1) she had been written up based on false grounds or for slight infractions for which other officers were not punished, (2) Cruz forced her to take an early lunch break, even though other supervisors let her have lunch later to avoid having two full meals within three hours of taking her insulin, (3) her vacation requests were denied, (4) her pay was docked without notice, and (5) she was spoken to in a hostile and derogatory manner.

In July of 2001, Baker received a memo from Superintendent Collier ruling against her complaint. She then filed a complaint with the CCDOC's internal affairs division. She gave a lengthy statement to the investigator. Baker asserts that she was told that the investigation was

inconclusive. Baker filed an EEOC charge on July 17, 2002, raising the allegations regarding Cruz that had appeared in her two internal complaints.

After Baker filed her EEOC charge, Cruz ordered Baker to take her lunch break at 10:00 whenever he was in charge of scheduling lunch breaks.[2] Baker states, without providing specifics, that she complained to her supervisors about the early lunches, which prevented Baker from safely managing her diabetes, but they did not do anything to help her. Baker did not file a written request for a lunch schedule that accommodated her diabetes, explaining that, "well, my doctors gave me a slip for the snacks or whatever, so [my supervisors] were working with me on that. And I had the rapport. And basically I have a good set of brass."

Cruz also constantly changed the orders previously given to Baker. Finally, he challenged her about eating in the barbershop and bringing in snacks, even though Superintendent Collier permitted her to snack in order to control her blood sugar. During the time that Baker was assigned to the barbershop, she was allowed to bring snacks and only had problems with one supervisor – Cruz – with respect to her snacks.

Baker filed an internal grievance regarding Cruz's alleged harassment. It reached the third level but was denied in September of 2002. The summary report accompanying the denial stated that Cruz had been recently sent to a command and supervision course which included training regarding communication skills and ethnic sensitivity. Baker appealed and after a hearing, her appeal was denied.

---

[2] Baker also directs the court's attention to portions of her journal which contain descriptions of additional harassment by Cruz. Unsworn letters, however, are not admissible in summary judgment proceedings. *Berwick Grain Co. v. Illinois Department of Agriculture*, 116 F.3d 231, 234 (7th Cir. 1997). The court will, therefore, not consider Baker's journal.

4

On June 4, 2003, Baker filed a second EEOC charge. In this charge, she stated that Cruz had been harassing her since 2001 and that the harassment had escalated since she filed her first EEOC charge. In support, she asserted that Cruz had changed her assignments, written her up unfairly, yelled at her in front of detainees, and created a hostile environment that caused her to experience stress which exacerbated the symptoms of her diabetes. She also alleged that Cruz had harassed her to retaliate against her for her prior charge and because she was diabetic.

After Baker filed her second EEOC charge, she was not demoted, but she was not promoted. Baker felt that she should have been promoted because she was qualified and less experienced people were promoted. The record, however, does not contain any specifics regarding the individuals who were promoted, and Baker has failed to lay a foundation showing that she can testify regarding the promoted officers' qualifications. Baker also believed that she was not promoted because she had been blacklisted for "cross[ing] somebody" or "step[ping] on the wrong toes." The parties agree that after Baker filed her EEOC charges, she was never demoted, her duties did not change, and she was not transferred to another work assignment.

After receiving a right to sue letter, Baker filed this federal lawsuit on September 16, 2003. Counts I and II, which allege retaliation in violation of Title VII and discrimination in violation of the ADA, respectively, are currently pending. The defendant seeks summary judgment as to both these counts.

## II. Standard for a Motion for Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992). The nonmoving party, however, may not merely rest upon the allegations or details in her pleadings, but instead, must set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. at 322.

The determination as to what facts are "material" in employment discrimination cases depends upon the substantive law of employment discrimination, and the burden of proof applicable under the law. *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 922 (7th Cir. 1988). When considering motions for summary judgment in discrimination cases, the court applies these criteria with added rigor because the matters of intent and credibility are crucial issues. *See Sarsha v. Sears, Roebuck, & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993).

### III. Discussion

#### A. Retaliation

Under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because [an employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Under the well-known *McDonnell Douglas* indirect method, Baker has the burden of establishing a prima facie case of retaliation by showing that: (1) she is in a protected group or engaged in a protected activity; (2) her job performance was adequate; (3) she was subjected to an adverse employment action (or some adverse action for retaliation); and (4) similarly situated employees outside her group were not. *See McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 802 (1973); *Volovsek v. Wis. Dep't of Agric. Trade & Consumer Protection*, 344 F.3d 680, 689 n.7 (7th Cir. 2003).

The defendant begins by asserting that Baker's retaliation claim fails because she has failed to show that she experienced an adverse action as a result of filing her EEOC charges. An adverse action occurs when an employee is fired or demoted, suffers a decrease in benefits or pay, or is given a significantly lesser job. *Hill v. American General Finance, Inc.*, 218 F.3d 639, 644 (7th Cir. 2000). However, not every unwelcome employment action qualifies as an adverse action. Negative reviews, a change in job title, an increased distance to travel to work, or a lateral transfer do not, by themselves, qualify. *See id., see also Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1988) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"); *Crady v. Liberty Nat'l Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993) (a materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation).

Baker asserts that she suffered an adverse employment action each time she spoke out about Cruz's harassment, filed a complaint, escalated a grievance, was written up for the slightest infraction, had her requests for vacation time denied, was forced to take an early lunch break, was subjected to taunting and intimidation, and was denied the promotion that she deserved. As noted above, however, unwelcome events in the workplace such as negative

7

reviews, reprimands, or other day to day decisions that an employee may not like are not "adverse employment actions" unless they are accompanied by a tangible job consequence. Baker has not alleged that she suffered any quantitative or qualitative consequences as a result of the alleged discrimination, apart from the alleged failure to receive a promotion.

The court thus turns to Baker's claim that she did not receive a promotion due to retaliation. The defendant correctly notes that to prevail on this claim, Baker must show that her failure to receive a promotion is linked to the fact that she filed charges with the EEOC. To do this, the defendant also correctly observes that Baker needs to show when the decision was made, who the decisionmaker was, and that the decisionmaker knew about at least one of her EEOC charges. The record, however, does not contain any of this critical information. Instead, Baker simply speculates that unidentified people who were purportedly similarly situated but did not file EEOC complaints received promotions.[3] This kind of unsupported argument is not enough to create a causal link between Baker's EEOC charge and the alleged failure to receive a promotion.

It is also not enough to create a question of fact as to whether retaliation in fact occurred because it does not create a triable issue of fact as to whether similarly situated employees who

---

[3] Interestingly, Baker also contends that officers with "juice" (*i.e.*, clout or connections) were systemically treated better than she was treated. According to Baker, this unfair use of the "good ol' boy network" also played a role in her failure to receive a promotion. Baker has not included a claim of discrimination based on political affiliation in her complaint so the court will not address this contention any further, except to say that if she indeed was the victim of discrimination based on political affiliation as she asserts (a point which the court does not reach), then she necessarily was not a victim of retaliation due to the filing of an EEOC complaint. On a related note, Baker alternatively argues that Cruz harassed her because he could not deal with strong black women. Be that as it may (again, the court will not reach this issue), this motivation is similarly not based on the filing of a claim of discrimination.

did not file EEOC charges received promotions. As discussed above, under *McDonnell Douglas*, Baker must point to evidence indicating that non-complaining similarly situated employees were treated more favorably than she was. *See, e.g., Lucas v. Chicago Transit Authority*, 367 F.3d 714, 730 n.16 (7th Cir. 2004). To show that an employee is similarly situated, Baker must demonstrate that "there is someone who is directly comparable in all material respects." *Grayson v. O'Neill*, 308 F.3d 808, 819 (7th Cir. 2002). Baker has failed to point to evidence showing that specific individuals who did not complain were otherwise similarly situated and received promotions. Simply arguing that she was subjected to a more stringent set of rules than other correctional officers is not enough to meet this burden.

In sum, the court does not mean to deprecate Baker's sincere belief that she was treated unfairly. The evidence discussed in her summary judgment filings, however, is not enough to establish a prima facie case of retaliation. Accordingly, the defendant's motion for summary judgment as to Baker's retaliation claim is granted.

**B.    The ADA**

Baker asserts that by challenging her ability to bring snacks into the barbershop and by requiring her to take an early lunch, Cruz discriminated against her due to her disability. She also argues that the defendant failed to provide an accommodation for her disability. In response, the defendant contends that Baker's ADA discrimination claim fails because she has not established that she is disabled under the ADA or that she suffered an adverse employment action as a result of animus directed at her based on her alleged disability.

To establish that the defendant discriminated against Baker due to her disability, she must show that: (1) she is disabled within the meaning of the ADA, (2) she was qualified for her

position, (3) she was subject to an adverse employment action, and (4) the circumstances surrounding the adverse action indicate that it is more likely than not that her disability was the reason for it. *See, e.g., Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922-23 (7th Cir. 2001)

The court finds that Baker's insulin-dependent diabetes rises to the level of a disability under the ADA. *See Lawson v. CSX Transp., Inc.*, 245 F.3d at 922-23. This is because the record shows that Baker's diabetes substantially limits her ability to eat as she needs insulin and properly spaced meals and snacks to maintain safe blood sugar levels. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999) (in determining whether a claimed disability is substantially limiting, the court must examine the plaintiff's condition as it exists after corrective or mitigating measures used to combat the impairment). The court also notes its disagreement with the defendant's position that Baker is not disabled because she had "simple dietetic restrictions." A physician provided documentation regarding Baker's need for regular snacks and it is undisputed that Baker took insulin for a substantial period of time and needed to time her meals around her doses of insulin.

The court, however, agrees with the defendant that there is no evidence in the record which suggests that she was the target of an adverse employment action due to her diabetes. The allegedly wrongful actions taken due to her diabetes – interference with her snacks and her desired meal schedule – represent purported failures to accommodate Baker's needs as opposed to discrimination due to her disability. Put another way, prohibiting Baker from controlling her blood sugar with food is not the same as firing her because the Cook County Jail does not like to employ diabetic correctional officers.

The court thus moves on to the heart of Baker's ADA claim: her contention that the defendant failed to accommodate her need to eat at certain times to manage her blood sugar levels. The defendant argues that this claim is barred because Baker did not raise it in her second EEOC charge.[4] The second EEOC charge stated that harassment (specifically, changes to assignments, write-ups, yelling, and otherwise creating a hostile atmosphere) had increased since the filing of Baker's first EEOC charge. It also stated that Baker believed that she was discriminated against due to filing the earlier charge and because of her disability.

A plaintiff is barred from raising a claim that was not included in her EEOC charge unless the assertion is "reasonably related" to one of the claims in that charge. *See, e.g., Green v. National Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1999). The Seventh Circuit has held that "a failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA . . . . Therefore, [these claims] are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of a disability." *Id.* at 898. In order for Baker's failure to accommodate claim to be properly before the court, it would have to be reasonably related to her disability discrimination claim. Because the Seventh Circuit has specifically rejected this line of reasoning, the court must conclude that Baker's failure to accommodate claim is outside the scope of her second EEOC charge. *See id.* This means that the defendant is entitled to summary judgment as to this claim.

---

[4] In Baker's complaint, she states that she filed her complaint within ninety days of receiving the right to sue letter for her second EEOC charge. The first charge, filed in 2002, is outside the ninety-day period.

11

## IV. Conclusion

For the reasons stated above, the defendant's motion for summary judgment [28-1] is granted.

DATE: March 30, 2005

Blanche M. Manning
U.S. District Court Judge